IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Pamela Duncan, ) | |
| ) | Civil Action No. 8:04-0831-RBH-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Health Management Resources, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In her complaint, the plaintiff alleges against the defendant, her former employer, four causes of action: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), breach of contract, breach of the covenant of good faith and fair dealing, and breach of contract accompanied by a fraudulent act.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

Health Management Resources, Inc. (HMR) manages long-term care facilities. The plaintiff was hired most recently by HMR to work as a Licensed Practical Nurse (LPN) at its Briarwood facility on February 28, 2002 (pl. dep. ex. 6).  She was 43 years old at the time (pl. dep. 20).  Prior to this, she had worked at several different HMR facilities since she

was first hired in December 1991; she either had resigned or was terminated from these facilities (pl. dep. 8; pl. dep. exs. 1-5).

When she was rehired in February 2002, she was expected to work 12-hour weekend shifts and during the week on an "as needed" basis. The plaintiff was told that she would be compensated at $18 per hour with a weekend shift bonus of $15 per day and overtime after eight hours per day (pl. dep. 38, 42-43). She also received two documents explaining her compensation; one addressed the weekend bonus but neither addressed overtime (def. mot. ex. 2, att. 1 and 2).

On June 16, 3003, HMR informed Briarwood employees, including the plaintiff, that they would no longer receive bonuses for working a weekend shift effective June 23, 2003 (pl. dep. 44-45, ex. 7). The plaintiff complained to Administrator Richard Wetmore that she had an agreement in her file that she would receive the weekend bonus. Wetmore did not find any agreement to this effect (Wetmore dep. 26).

On September 24, 2003, HMR informed Briarwood employees that, effective November 3, 2003, overtime would be paid for hours worked in excess of 40 hours per week, rather than in excess of eight hours per day (pl. dep. ex. 11). This change, as well as the elimination of the weekend bonus, was in response to financial issues at Briarwood, including Medicare cutbacks (Wetmore dep. 37; Denner dep. 41, 51-52). HMR also eliminated other bonuses at Briarwood, including a $25 bonus to employees who worked an extra shift and a $500 bonus for referring a new nurse to the facility who worked for at least six months (Denner dep. 52-53).

The plaintiff complained to several HMR officials – to Denner and Wetmore as well as to HMR President Mike McBride and HMR Director of Human Resources Sandy Gordin (pl. dep. ex. 12, 15; Denner dep. 21-22). The plaintiff did not complain that these compensation changes were motivated by her age (pl. dep. ex. 12, 15). On October 5, 2003, the plaintiff submitted a notice of resignation informing HMR that, effective

October 27, 2003, she no longer wished to work as a weekend nurse but wanted to continue to work during the week on an "as needed" basis (pl. dep. ex. 14).

Subsequently, Denner and Wetmore began to receive complaints that the plaintiff was disrupting the workforce and spreading ill-will among employees by telling them that Denner and Wetmore were "trying to get rid of everybody" (Wetmore dep. 29-31). They reminded the plaintiff that she needed to change her conduct to comply with Briarwood's Service Standards which state, "Address your concerns with your supervisor, not with other employees, family members or residents" (Wetmore dep. 30-31; Denner dep. 24; pl. dep. ex. 6). However, Denner and Wetmore continued to receive complaints from Briarwood employees of disruptive behavior by the plaintiff. For example, the plaintiff asked CNA Michelle Cook if she was leaving her job like everyone else; when Cook told her that she wasn't, the plaintiff told her, "you better get out of this hell whole (sic) before Marsha and Richard get rid of you, because the two of them got (sic) it out for you!" (Gordin aff.). Denner also received complaints that the plaintiff was spreading rumors that Denner was out to get the Briarwood staff and planned to bring in employees from her previous facility (Denner dep. 33-34). Furthermore, Denner received complaints that the plaintiff was spreading rumors to residents and employees that Briarwood was going to cut employee salaries (Denner dep. 35-36, 49-50). Finally, Eric Kisob complained to Denner that the plaintiff had been calling him at home and trying to get him to quit so that the Briarwood facility would be left without employees to work the weekend shifts (Denner dep. 28-30).

Denner, who is 60 years old, was responsible for hiring and firing nurses at the Briarwood facility, and Wetmore had the final authority to approve any termination (Denner dep. 6, 10, 47; Wetmore dep. 16). Based on these continued complaints regarding the plaintiff's disruptive conduct, Denner recommended to Wetmore and Gordin that the plaintiff not be allowed to work out her notice period on weekend shifts and not be allowed to continue working "as needed" during the week (Denner dep. 30-31, 40, 47). Wetmore

3

and Gordin agreed with her recommendation, and Denner informed the plaintiff that she was being terminated for disloyalty (Wetmore dep. 20-21, 29-31; pl. dep. 77 and ex. 17). HMR paid the plaintiff through October 27, 2003, even though she was not allowed to work those days.

After her termination, the plaintiff sent a letter to McBride regarding her termination. Specifically, she complained that she believed Wetmore terminated her in retaliation for going over his head to complain about him. For the first time, she also complained that her age was a factor in her termination:

> I am forty-five years old; therefore I am on a higher pay scale than the younger nurses just out of school. Marsha Denner has made the statement that hiring younger nurses who work cheap and do not cause trouble would be great on several occasions. My job was offered to a younger nurse, and I have been told raises were given out to several if not all of the remaining staff the day I was terminated.

(Pl. dep. ex. 17). The plaintiff was actually replaced by Denise Bright, who is 51 years old (Denner dep. at 57). Of the seven nurses hired from June 2003 to December 2003, only one was younger than 40 and four were older than the plaintiff (Gordin aff.). After the plaintiff's resignation, HMR did not reinstate the weekend shift bonus or overtime in excess of eight hours per day at the Briarwood facility (Wetmore dep. 61).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

4

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather the non-moving party must demonstrate that specific material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that

> there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Age Discrimination*

The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. §623(a)(1). In order to prove an ADEA claim, an employee may proceed under either "(1) a 'mixed-motive' framework, requiring evidence that the employee's age motivated the employer's adverse decision, or (2) a 'pretext' framework identical to the *McDonnell Douglas* burden-shifting analysis used in Title VII cases." *EEOC v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 163 (4th Cir. 2004).

To establish an ADEA claim by the "mixed-motive" framework requires "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race . . . was a motivating factor for [the] employment practice. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 2155 (2003). The Fourth Circuit has "assumed, without deciding, that direct evidence is still a prerequisite for a mixed-motive analysis in ADEA cases." *Warfield-Rohr*, 364 F.3d 160, 163 n.1. If the plaintiff-employee can show that age was a motivating factor in the adverse employment decision, the defendant-employer still may avoid liability by proving that it would have made the same adverse employment decision even in the absence of a discriminatory motive. *Id.* at 164 (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

The *McDonnell Douglas* "pretext" framework, by contrast, is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the

plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant-employer to articulate a legitimate reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802-03).

In her complaint, the plaintiff alleges that she was terminated without cause or notice on October 17, 2003 (compl. ¶ 30).  She specifically alleges that

> Defendant's explanation for Plaintiff's termination was and is a pretext for discrimination.  Plaintiff was terminated, treated in a disparate manner, and was otherwise discriminated against in the terms and conditions of her employment because of her age.

(Compl. ¶ 31).

Under the "pretext" framework, to establish a *prima facie* case of age discrimination as it relates to her discharge, the plaintiff must show:  (1) she was protected by the ADEA; (2) she was qualified for the position she filled and performed at a level that met her employer's reasonable expectations; (3) she was discharged despite her performance; and (4) she was replaced by someone substantially younger despite her qualifications.  *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).  The defendant contends that the plaintiff cannot establish the third or fourth elements of a *prima facie* case.  Even if the plaintiff can establish a *prima facie* case of age discrimination, the defendant claims that it has articulated a legitimate, non-discriminatory reason for her discharge, for which the plaintiff has no evidence to demonstrate that it is pretext for age discrimination.

The plaintiff resigned her position as a weekend nurse – her primary job assignment – but indicated that she wanted to continue to work during the weeks on an "as needed" basis (pl. dep. ex. 14).  When HMR management continued to receive reports that

the plaintiff was disrupting the workforce, she was terminated prior to the effective date of her resignation. Although she was not allowed to work her weekend assignment through her notice period, she was paid as though she worked the complete notice period. Significantly, however, she was not allowed to continue to work during the week on an "as needed" basis. Even though it was not her primary job assignment when she was hired in February 2002, the plaintiff was interested in continuing to work for HMR on an "as needed" basis during the week. The defendant has presented no evidence that, prior to receiving the complaints about her disrupting behavior, HMR was not prepared to allow her to work in that capacity. Even though she had resigned from her weekend position, terminating her from working on an "as needed" basis is an adverse employment action. Accordingly, the plaintiff can establish the third element of a *prima facie* case of age discrimination.

The plaintiff cannot establish, however, the fourth element of a *prima facie* case. The plaintiff was replaced by a nurse who was several years older than she (Denner 57). The plaintiff does not dispute or otherwise contest this fact. Because she cannot establish that she was replaced by a younger individual, the plaintiff cannot establish a *prima facie* case of age discrimination. In the absence of a *prima facie* case, it is not necessary for this court to consider the parties' arguments regarding pretext.

In the past, a plaintiff in a Title VII or ADEA case had to present "direct evidence" to qualify for consideration under the mixed-motive framework. *See Fuller v. Phipps*, 67 F.3d 1137, 1141-42 (4th Cir. 1995), *abrogated by Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148 (2003). In *Desert Palace, Inc. v. Costa*, 123 S.Ct 2148 (2003), a Title VII case, the United States Supreme Court recently reconsidered whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive jury instruction. *Id.* at 2153. The Court eliminated the direct evidence requirement in Title VII cases, holding that in order to qualify for a mixed motive jury instruction "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence,

that race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Id.* at 2154. As noted above, the Fourth Circuit has not directly addressed whether *Desert Palace* also applies to age discrimination cases under the ADEA, but it has been assumed that it does not apply. *See Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d at 284 n.2 ("It has been assumed that the 'mixed motive' provision of the Civil Rights Act of 1991 does not apply to the ADEA and, therefore, that the burden-shifting and direct evidence requirements of *Price Waterhouse* continue to apply to such claims. Our decision, however, does not hinge upon the method, but upon the sufficiency of proof under either framework."). *See also Kozlowski v. Hampton School Bd.*, 77 Fed. Appx. 133, (4th Cir. 2003).

The plaintiff contends that she has presented direct evidence of age discrimination and thus is entitled to prove her claim by the mixed-motive framework. The Fourth Circuit has defined direct evidence as "evidence of conduct or statements that both reflect directly the allegedly discriminatory attitude and that bear directly on the contested employment decision." *Fuller*, 67 F.3d at 1142. Here, the plaintiff cites the following as direct evidence of age discrimination:

> Wetmore commented that he could hire graduate nurses or younger nurses who didn't go over his head to complain (pl. dep. 62, 68).
>
> When she did not accept his explanation that he had no control over her compensation, Wetmore told her, "You know, you just act so stubborn. Don't act so old" (pl. dep. 71, 77-78).
>
> Wetmore told the plaintiff that "he wished he could make the money [the plaintiff] made and the overtime [the plaintiff] made" (pl. dep. 78).

In a letter to Mike McBride after her resignation, the plaintiff accused Denner, not Wetmore, of making age-related comments: "Marsha Denner has made the statement that hiring younger nurses who work cheap and do not cause trouble would be great on several

9

occasions" (pl. dep. ex. 17). In light of the fact that the plaintiff was replaced by a nurse several years older than her, however, these comments are simply insufficient evidence for a reasonable jury to conclude by a preponderance of the evidence that age was a motivating factor in HMR's decision to terminate the plaintiff. *See Desert Palace*, 123 S.Ct. at 2155. Thus, the plaintiff's age discrimination claim cannot survive summary judgment under either the pretext or the mixed-motive framework.

### *Contract Claims*

The plaintiff also alleges state law causes of action for breach of contract, breach of contract accompanied by a fraudulent act and breach of the covenant of good faith and fair dealing. As it is recommended that summary judgment be granted on the plaintiff's federal claim, the court should decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. *See* 28 U.S.C. §1367(c).

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, summary judgment should be granted on the plaintiff's age discrimination claim, and the court should decline to exercise jurisdiction over the remaining state law claims.

s/William M. Catoe  
United States Magistrate Judge

July 13, 2005

Greenville, South Carolina